**RECEIVED**

JAN - 4 2013

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

WILLIAM POWELL,
     Petitioner

VERSUS

WARDEN, AVOYELLES CORRECTIONAL
CENTER,
     Respondent

CIVIL ACTION
SECTION "P"
NO. 1:12-cv-00296

JUDGE DEE D. DRELL
MAGISTRATE JUDGE JAMES D. KIRK

## REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 by pro se petitioner William Powell ("Powell") on January 26, 2012 (Doc. 1). Powell is challenging his 2008 parole revocation by the Louisiana Department of Public Safety and Correction's (DPSC's) Division of Probaton and Parole. Powell v. Louisiana Parole Bd., 2010 CA 2058 (La. App. 1st Cir. 5/6/2011), 2011 WL 2024478, writ den., 2011-CI-1075 (La. 11/23/11), 76 So.3d 1149.

Powell raises the following grounds for habeas relief:

1. Powell was denied his Sixth Amendment right to confront and cross-examine adverse witnesses, where the entire hearing was predicated on hearsay evidence, as not one adverse witness was made available at the final revocation hearing for Powell's retained counsel to confront and cross-examine.

2. Powell was denied his Fourteenth Amendment right to due process where the preliminary probable cause hearing was held beyond the time limitations set by law, causing

irreparable injury to Powell.

3. Powell was denied his Fourteenth Amendment due process right where the preponderance of evidence standard of proof for revoking parole was not met.

4. Powell's Fourteenth Amendment due process rights were violated where the State of Louisiana and the parole board allowed La.R.S. 15:574.9 to control Powell's case.

Powell has shown exhaustion of his state court remedies. The State filed a response to Powell's petition (Doc. 16). Powell's habeas petition is now before the court for disposition.

The undersigned ordered the Respondent to file a CD or a transcript of the preliminary hearing because Powell's parole revocation is based on the testimony and evidence adduced at the preliminary hearing. The Respondent replied there is no recording or transcript of the preliminary hearing because the Parole Board is not "required" to make one; instead, there is a "summary" of the preliminary hearing written by the preliminary hearing officer.

The State contends that Powell has never complained of the lack of a hearing transcript (Doc. 19). The undersigned requested a transcript of the parole revocation proceedings in an attempt to discover whether the State did, in fact, comply with the minimum requirements of due process at Powell's hearings; as discussed below, certain aspects of due process are not reflected in the hearing reports. Since there are no transcripts, the undersigned assumes the hearing reports accurately reflect the due process deficiencies in Powell's hearings.

<u>Rule 8(a) Resolution</u>

This court is able to resolve the merits of this <u>habeas corpus</u> petition without the necessity of an evidentiary hearing because there is no genuine issue of material fact that is relevant to the petitioner's claims, and the State court records provide the required and adequate factual basis necessary to the resolution of the habeas corpus petition.  <u>Moya v. Estelle</u>, 696 F.2d 329, 332-33 (5th Cir. 1983); <u>Easter v. Estelle</u>, 609 F.2d 756, 761 (5th Cir. 1980); Habeas Corpus Rule 8(a).

<u>Procedural History</u>

On February 29, 2008, Powell requested a deferral of his preliminary parole hearing, in order for the state criminal charges against him to be resolved (Doc. 16, pp. 67/102, 17/78).  The state criminal charges against Powell were dismissed on April 11, 2008 (Doc. 16, p. 82/102).

Powell's preliminary hearing was held on July 30, 2008 (Doc. 16, p. 80/102).  The State did not produce a recording or transcript of that hearing.  The July 31, 2008 summary/report of the preliminary hearing shows that Powell was present with his attorney, and states that Powell's parole officer, Officer Weaver, informed the Parole Board that she had been unable to locate the 49-year-old victim, Emily Adams of Mt. Hermon, Louisiana, and that the charge against Powell had been dismissed because Adams had not made herself available for the court and the District Attorney

3

(Doc. 16, p. 82/102).  Parole Officer Weaver also stated that she had ascertained that the address provided to the police by Adams was for an abandoned house (Doc. 16, p. 82/102).  Parole Officer Weaver informed the Parole Board that the police officer who was first on the scene of the offense, Officer Turner, initially responded to her phone call, but stopped returning her calls and failed to appear and testify at the hearing (Doc. 16, p. 82/102). However, the investigating officer, Officer Neely, testified as to what the officers on-scene, Officers Turner and Rebenack, told him about the incident (Doc. 16, p. 82/102).

The preliminary hearing officer summarized a synopsis of the police reports that were written and provided by Parole Officer Weaver, as well as the police reports themselves (Doc. 16, pp. 83, 85/102).  The police reports provided were written by Detective Neely, based on a verbal report to him by Officer Turner, and by Officer Turner (Doc. 16, pp. 89-102/102).  The Parole Board's preliminary report concluded there was probable cause to charge Powell with a parole violation, noting "[t]here appears to be a mirror image of the instant offense as Powell has the same mode of operation," referring to the offense for which he was on parole (Doc. 16, p. 84/102).

Powell was notified of his final hearing date and his rights at that hearing, including the right to cross-examine adverse witnesses who were not present at his preliminary hearing (Doc. 16,

4

p. 77/102).  At his final hearing on October 2, 2008, the only witness to testify was Powell's mother (Doc. 16, p. 68/102).  No witnesses were presented by the State.  Based on the hearsay documentary evidence presented at the probable cause hearing, the parole board decided to revoke Powell's parole based on the reports and because he had previously "pled guilty of being arrested and charged with attempted forcible rape," the crime for which he was on parole (Doc. 16, pp. 70/102).

Powell filed an appeal seeking reversal of his parole revocation with the Commissioner of the Louisiana Parole Board (Doc. 16, pp. 29/78, 33/84).  The Commissioner's report did not mention the fact that the victim, Adams, and Officer Turner failed to appear at the parole hearing.  In affirming Powell's revocation, the Commissioner relied on the facts which Powell did not dispute, noted the actual reason for the dismissal of the charge against Powell was not in evidence but it "appear[ed] clear that the victim was either unable to be located or was not a cooperative witness," found Powell had the opportunity to cross-examine one of the investigating officers [Neely] who was "present" at the scene of the incident,[1] and stated that, although an arrest alone was insufficient for revocation, the record contained "other undisputed

_____

[1] The Commissioner's report is inaccurate.  Detective Neely was called to the scene by Officer Turner, so he arrived at the scene later and did not personally witness any of the events. Detective Neely only took statements from the officers on-scene and the victim.

facts and evidence" to support the conclusion that it was more likely than not that Powell had committed a criminal act against Adams (Doc. 16, pp. 36-37/84). The Commissioner's report further stated that Petitioner did not dispute the facts except for stating he did not try to rape Adams, but that Adams (who had admitted to the officers that she was drunk), had first agreed to have sex with him then changed her mind (Doc. 16, p. 38/84).

Upon instituting judicial proceedings, Powell's parole revocation was affirmed by the state district court, the Louisiana 1st Circuit Court of Appeal, and the Louisiana Supreme Court (Doc. 16, pp. 67-72/78).

<u>Standard of Review</u>

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall be considered only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a).

Under 28 U.S.C. § 2254 and AEDPA, which is applicable to habeas petitions filed after its effective date on April 24, 1996, habeas relief is not available to a state prisoner with respect to a claim that was adjudicated on the merits in the State court proceedings unless the adjudication of the claim (1) resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law as determined by

the Supreme Court of the United States; or (2) resulted in a decision that was based on an *unreasonable determination* of the facts in light of the evidence presented in the State Court proceeding. Therefore, pure questions of law and mixed questions of law and fact are reviewed under Section 2254 (d)(1), and questions of fact are reviewed under Section 2254(d)(2). <u>Martin v. Cain</u>, 246 F.3d 471, 475-76 (5th Cir. 2001), cert. den., 534 U.S. 885, 122 S.Ct. 194 (2001), and cases cited therein.

A state court decision is "contrary to" clearly established Supreme Court precedent if the state court applies a rule that contradicts the governing law set forth in Supreme Court cases, or confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. A state court decision falls within the "unreasonable application" clause when it unreasonably applies Supreme Court precedent to the facts. <u>Martin</u>, 246 F.3d at 476, and cases cited therein.

A federal habeas court making the unreasonable application inquiry should ask whether the state court's application of clearly established federal law was objectively reasonable. A federal court cannot grant habeas relief simply by concluding that the state court decision applied clearly established federal law erroneously; the court must conclude that such application was also unreasonable. <u>Martin</u>, 246 F.3d at 476, and cases cited therein.

7

<u>Law and Analysis</u>

<u>Claims 1 & 3 - Hearsay Evidence</u>

Powell contends he was denied his Sixth Amendment rights to confront and cross-examine adverse witnesses where the entire hearing was predicated on hearsay evidence, as not one adverse witness was made available at the final revocation hearing for Powell's retained counsel to confront and cross-examine.  Powell also contends he was denied his Fourteenth Amendment due process right where the preponderance of evidence standard of proof for revoking parole was not met.

1. The Hearings

With respect to parole revocation proceedings, the United States Supreme Court has held that the federal Constitution requires that a parolee be afforded an informal hearing structured to assure that the finding of a parole violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the parolee's behavior.  <u>Morrissey v. Brewer</u>, 408 U.S. 471, 484, 92 S.Ct. 2593 (1972).

In <u>State ex rel. Bertrand v. Hunt</u>, 308 So.2d 760, 763 (La. 1975), the Louisiana Supreme Court stated that a preliminary hearing under the <u>Morrissey</u> standards, <u>Morrissey</u>, 408 U.S. at 488-89, requires some minimal inquiry to be conducted at or reasonably near the place of the alleged parole violation or arrest, promptly after the arrest, with a determination of reasonable grounds for

8

revocation of parole by someone not directly involved in the case. The parolee should be given notice of the hearing, he may appear and speak in his own behalf, bring evidence and witnesses, and question witnesses against him. A summary of the proceedings shall be prepared by the hearing officer. A final parole revocation hearing is more formal and leads to a final evaluation of the facts to determine whether they warrant revocation. These minimum requirements that must be met are: (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; *(d) the right to confront and cross-examine adverse witnesses* (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the fact finders as to the evidence relied on and reasons for revoking parole.

It is noted that the "preliminary hearing" in Powell's case, conducted by the hearing officer (not the parole board), was the hearing at which the evidence against Powell was presented, and Powell appeared with counsel and defended himself against the charge. The parole board held a "final hearing" at which they did nothing more than discuss and adopt the hearing officer's findings

9

and recommendation. The "final hearing" in this case obviously did not comply with the minimal requirements of due process in a parole revocation proceeding.

## 2. The Evidence

At the preliminary hearing, the hearing officer considered the police reports by the arresting officers, the report and testimony by Powell's parole officer, Powell's testimony, and testimony by Detective Neely.

According to Officer Turner's report, he drove up behind Powell's van, which was parked on the side of a road in New Orleans. As he drove up, the van slowly began taking off and Adams jumped from the van, naked from the waist down and screaming for help; the van then fled at a high rate of speed (Doc. 16, p. 96/102). Officer Turner stated in his report that Adams asked him for help and said Powell had tried to rape her (Doc. 16, p. 96/102). Officer Turner called in a description of Powell's van, which was quickly found stuck in the mud further down the street by Officer Rebennack and Officer Lincoln (Doc. 16, p. 97/102). Office Turner's report further states that Powell was returned to the scene of the offense, identified by Adams as the perpetrator, and arrested (Doc. 16, p. 97/102).

Detective Neely stated in his report that he was sent to the scene of the offense, and met with Officer Turner who advised him of what had occurred (Doc. 16, p. 98/102). Detective Neely stated

10

in his report that Officer Rebenack had told him he saw Powell removing things from his van, including a purse and a pair of black boots, which Rebenack retrieved and returned to the victim before Detective Neely arrived (Doc. 16, p. 98/102). Officer Turner stated in his report that Adams had told him she had been in the French Quarter with friends, drank a Hurricane and became intoxicated, and thought Powell was a friend of a friend, so she accepted a ride to her friend's house; however, instead of taking Adams to her friend's house, Powell parked the van (Doc. 16, pp. 98-99/102).

According to Detective Neely's written report, Adams told Neely that she accepted a ride with Powell, then Powell tried to talk her into having sex with him, but she refused and Powell forcibly removed her boots, pants, and underpants; Adams struggled, got the door open, and jumped out half naked and screaming (Doc. 16, pp. 98-99/102). Detective Neely's report also states that Adams positively identified Powell as the perpetrator in front of Neely (Doc. 16, pp. 98-99/102).

Powell's parole officer, Officer Weaver, wrote in her case notes that Officer Lincoln called her and told her that Adams had also claimed Powell tried to rape her at knife-point, but a knife was never found and Officer Lincoln told Parole Officer Weaver that he did not believe Adams (Doc. 16, p. 13/78).

There is no record of the testimony presented at the

11

preliminary hearing because it was not recorded.  The hearing officer's written report shows that Parole Officer Weaver, Powell, and Detective Neely testified.  The preliminary hearing report also states that the arresting officers, Officer Turner and Officer Rebenack, did not show up for the hearing, and that the victim, Adams, had provided the police with a false address, had not appeared for Powell's criminal proceedings (which were consequently dismissed), did not show up at the preliminary hearing, and could not be located.

### 3. Applicable Law and Analysis

The only evidence presented by the State at Powell's preliminary hearing was hearsay, also in violation of due process. The only exception expressly recognized in <u>Morrissey</u> for requiring confrontation and cross-examination at the preliminary hearing was "if the hearing officer determines that an informant would be subjected to risk of harm if his identity were disclosed." <u>Morrissey</u> 408 U.S. at 487, 92 S.Ct. at 2603.  The Supreme Court viewed the preliminary hearing as a tool for preserving live testimony and a parolee's right to confront his accuser as important to assure accurate findings of fact.  <u>Farrish v. Mississippi State Parole Bd.</u>, 836 F.2d 969, 977 (5th Cir. 1988).

The parole revocation hearing is not akin to a criminal prosecution; it is a narrow inquiry and the process should be flexible enough to consider evidence including letters, affidavits,

and other material that would not be admissible in an adversarial criminal trial. Morrissey, 408 U.S. at 488-89, 92 S.Ct. at 2604. Conviction of a criminal charge is not a constitutional prerequisite to the revocation of parole. The habeas court inquires only whether there is some evidence to support the revocation decision. Moore v. Hargett, 62 F.3d 395 (5th Cir. 1995).

A parolee who requests a revocation hearing and contests the charged violation has a qualified right to confront and cross-examine adverse witnesses. Williams v. Johnson, 171 F.3d 300, 304 (5th Cir.), cert. den., 528 U.S. 882, 120 S.Ct. 197 (1999), citing McBride v. Johnson, 118 F.3d 432 (5th Cir. 1997) (finding a due process violation where hearsay evidence regarding the violation was the sole evidentiary basis for revocation), and Farrish, 836 F.2d at 978 (concluding the admission of hearsay statements deprived the parolee of his right to confront the adverse witness whose information provided the basis for his parole revocation). Hearsay evidence alone is insufficient proof of criminal activity upon which to base a revocation. State v. Rochelle, 38,633-KA (La. App. 2 Cir. 6/23/04), 877 So.2d 250, 256, and cases cited therein.

Although due process provides the defendant in a revocation proceeding with the right to confront and cross-examine adverse witnesses, the district court may deny the releasee the right to confrontation *upon a finding of good cause*. U.S. v. Justice, 430

13

Fed.Appx. 274 (5th Cir. 2011), citing Morrissey, 408 U.S. at 489,
92 S.Ct. 2593.   The district court must specifically find good
cause and must make the reasons for its finding part of the record.
United States v. Minnitt, 617 F.3d 327, 333 (5th Cir. 2010).   In
evaluating good cause, the district court must weigh the
defendant's interest in confrontation of a particular witness
against the Government's proffered reasons for pretermitting the
confrontation.   Minnitt, 617 F.3d at 333.   Reliability of the
challenged hearsay is a critical consideration in a district
court's determination of whether good cause exists to disallow
confrontation.   Minnitt, 617 F.3d at 334.   The Fifth Circuit has
affirmed the use of hearsay testimony without cross-examination at
parole revocation hearings in specific cases, each of which
concerned the admissibility of hearsay testimony from a laboratory
report or a laboratory technician in revocation proceedings; such
testimony was allowed because a releasee's interest in cross-
examining a laboratory technician regarding a scientific fact is
minimal because th truth of the fact can be verified through the
methods of science rather than through the rigor of cross-
examination, such as through retesting, while the governing has a
strong interest in avoiding the expense and difficulty in securing
lab technicians to testify and the lab results bear a substantial
indicia of reliability.   Justice, 430 Fed. Appx. at 278, citing
Minnitt, 617 F.3d at 333.

14

However, when the charge against the releasee turns on a credibility choice between the releasee and a hearsay declarant whose testimony has *not* been shown to be reliable, the Fifth Circuit has held that a right of confrontation is required. Justice, 430 Fed. Appx. at 278, and cases cited therein.

The use of hearsay presents a two-fold problem: it prevents the parolee from confronting and cross-examining the declarant, and unreliable hearsay undermines the accuracy of the fact-finding process. Consequently, courts considering the admissibility of hearsay in revocation proceedings have adopted an approach which balances the parolee's interest in confronting a particular witness against the government's good cause for denying it, particularly focusing on the "indicia of reliability" of a given hearsay statement. Farrish, 836 F.2d at 978. Also, United States v. Kindred, 918 F.2d 485 (5th Cir. 1990). While in some cases there is simply no adequate alternative to live testimony, the Supreme Court has emphasized that it did not intend, in Morrissey, to prohibit use, where appropriate, of the conventional substitutes for live testimony, including affidavits, depositions, and documentary evidence. Gagnon v. Scarpelli, 411 U.S. 778, 782 n.5, 93 S.Ct. 1756, 1760 n.5 (1973). However, courts have questioned the reliability of police reports when presented through the testimony of police officers. State v. Rochelle, 38,633-KA (La. App. 2d Cir. 2004), 866 So.2d 250, 257, citing United States v.

15

<u>Comito</u>, 1177 F.3d 1166, 1171 (9th Cir. 1999), and <u>Farrish</u>, 836 F.2d at 978.

In <u>Farrish</u>, the court found that Farrish's detention for a final parole revocation hearing impermissibly rested on statements by an adverse witness who did not appear for confrontation and cross-examination at the preliminary hearing. The court found the only evidence that Farrish committed the alleged parole violation-the sale of marijuana-were statements by Mohon which contradicted Farrish's version of the same events and shifted a potential conviction for drug dealing from Mohon to Farrish; therefore, Mohon's self-serving statements were inherently unreliable. Since Mohon did not appear and testify at Farrish's preliminary revocation hearing, the parole board relied on hearsay testimony by the officers as to what Mohon had told them to support a finding of probable cause which would justify Farrish being held in custody until a final revocation hearing. The court concluded that, because the question of whether Farrish sold marijuana required a credibility choice between Mohon and Farrish, the parole board's reliance on hearsay testimony only denied Farrish's right to confront and cross-examine Mohon.

In the case at bar, the victim, Adams, could not be located after she gave her statement to the police because she gave the police an address to an abandoned house, and she did not appear for Powell's criminal proceeding or his preliminary parole hearing

16

(Doc. 16, p. 82/102).   The officer who was first on the scene, Officer Turner, who was the only officer present when Adams exited Powell's vehicle and asked for help, also did not appear at the hearing (Doc. 16, p. 82/102).   Officer Rebenack and Officer Lincoln, who found Powell and his van stopped down the street, also did not appear to testify at the revocation hearing (although Officer Lincoln contacted Parole Officer Weaver).   Instead, the investigating officer, Detective Neely, testified at Powell's preliminary hearing as to what he (Neely) had been told by the victim, Adams, and by the arresting officers who were on-scene at the incident (Officers Turner and Rebenack) (Doc. 16, p. 82/102), and the police reports and the parole officer's case notes were put in evidence at the preliminary hearing.   Detective Neely testified that he was called to the scene *after* Powell had been arrested, that the (intoxicated) victim, Adams, told Neely that Powell had tried to rape her, and Adams identified Powell as her assailant. Therefore, Detective Neely's testimony consisted entirely of hearsay-what he had been told by the officers on-scene and by Adams.

There is no record of the hearing because, according to the parole board, it was only the "preliminary hearing."   The record does not indicate whether the preliminary hearing officer found there was good cause to not allow Powell to confront and cross-examine the adverse witnesses against him (victim Adams, Officer

17

Turner, Officer Rebenack, Officer Lincoln). No evidence was presented by the State at that hearing (Tr. p. 74/102). Therefore, the preliminary hearing served as the "final hearing" in this case, although it was not conducted before the parole board; the preliminary hearing was the only hearing at which evidence and testimony as to the charge against Powell were adduced. In making its decision, the parole board stated that it considered the report by the preliminary hearing officer (which included a summary of the police reports) and the fact that Powell had previously pleaded guilty to a similar offense, and it apparently simply adopted the findings of the preliminary hearing officer, which were based on hearsay testimony.

Clearly, the parole board relied on the preliminary hearing officer's findings, which were based solely on hearsay testimony; therefore, the parole board's decision was based solely on hearsay. The preliminary hearing officer, and the parole board, found the hearsay testimony concerning Adams' statements to the police was "credible," despite the fact that Adams was intoxicated at the time of the incident, gave the police a false address, and failed to appear for the criminal proceedings against Powell (Tr. p. 84/102). However, the law does not afford an inherent credibility to Adams' statements, and her credibility was never established because she did not appear and testify at either the criminal proceeding or the preliminary hearing. Since the charge against Powell turned on a

18

credibility choice between Powell and Adams, whose testimony as not
been shown to be reliable, and since only hearsay testimony by
Detective Neely as to Adams' statements was used to establish
Powell's guilt, Powell's due process right to confront and cross-
examine Adams was violated.  Compare, <u>Justice</u>, 430 Fed. Appx. at
278.

The hearsay testimony by Detective Neely, as to Officer Turner
and Officer Rebbennack's statements and their police reports, is
likewise not inherently credible.  The parole board used the
hearsay to establish guilt, thereby denying Powell's right to
confront and cross-examine the officers as to the events and their
observations.

Finally, although the preliminary hearing officer clearly
stated in his report that Detective Neely was called to the scene
after the incident and took statements from the arresting officers
and the victim, the parole board erroneously found that Powell had
an opportunity to cross-examine one of the officers who was
"present at the scene."  Since neither the arresting officers nor
the victim were present, all of this evidence was presented as
hearsay testimony by Detective Neely.

Adams' statements implicating Powell were not credible, given
the fact that she gave a false address to the police.  Had Officer
Turner, Officer Rebbennack, or Officer Lincoln appeared and
testified as to what they observed, there would have been some

direct evidence to support the hearsay testimony as to Adams' complaints. But they failed to do so. Compare, <u>State v. Lassai</u>, 366 So.2d 1389, 1391 (La. 1978)(a urinalysis report form filled in by an unknown person purporting to convey information about a laboratory computer report of the urinalysis results is inadmissible because it violates minimum due process rights of confrontation and examination of witnesses in a probation or parole revocation hearing).

The law in this circuit is clear. A parole board may not rely solely on hearsay testimony to establish guilt for a parole revocation. Detective Neely's testimony was solely hearsay - he testified only as to what others told him or as to what was written in the police reports. There was *no* evidence on the charge presented to the parole board itself; the parole board relied on the written report by the preliminary hearing officer, which was based on Detective Neely's hearsay testimony, the police reports, and Powell's testimony. Since the Parole Board based Powell's parole revocation solely on a report which was based on hearsay testimony and the fact that Powell had a prior conviction for a similar offense, Powell's right to the minimal due process afforded at parole revocation hearings was violated, an error that was clearly not harmless.[2]

_____

[2] It is noted that the Louisiana 1st Circuit Court of Appeal stated that the record of the parole revocation hearing showed that "Powell was notified of the hearing, was represented by

Moreover, Powell's right to confront and cross-examine Adams, Officer Turner, Officer Rebennack, and Officer Lincoln. The hearing officer did not make a finding, supported by reasons, that there was good cause to deny Powell his right to confront and cross-examine his accusers.[3]  Therefore, Powell's right to due process was violated in this respect, as well.

Therefore, Powell's habeas petition should be granted and his parole revocation should be reversed because of the violation of his due process right to an adversarial hearing before the parole board and violation of his right to confront and cross-examine the witnesses against him.

Claim 2 - Time Limit

Next, Powell contends he was denied his Fourteenth Amendment right to due process where the preliminary probable cause hearing was held beyond the time limitations set by law, causing irreparable injury to Powell.

Powell deferred holding his preliminary hearing, in writing

---

counsel, and had the opportunity to challenge the allegations of the charge against him, to present witnesses, and to testify on his own behalf" (Doc. 16, p. 70/78).  The court apparently overlooked the right to confront and cross-examine adverse witnesses.

[3] The undersigned assumes such a finding was not made at the preliminary, probable cause hearing, since there is no transcript of the hearing and such a finding is not reflected in the hearing officer's written reasons for finding probable cause.  The State/Probation Officer did not present any witness testimony against Powell at the final hearing.

(Doc. 16, p. 17/78); apparently, Powell wanted to wait until the state court charge against him was disposed of.   Since Powell waived the time limit on the hearing, his right to due process was not violated.   This ground for relief is meritless.

Claim 4 - Due Process

Powell contends his Fourteenth Amendment due process rights were violated where the State of Louisiana and the parole board allowed La.R.S. 15:574.9 to control Powell's case.   Powell contends Section 574.9 is only applicable to parole-board granted parolees and not to those who have earned their release via diminution of sentence.   Powell contends that La.R.S. 15:571.4 applies to his case.

Specifically, these statutes provide, in pertinent part, as follows:

> § 571.4. Computation of diminution of sentence allowed; forfeiture
>
> $\ast$          $\ast$          $\ast$
>
> B. ... (2) An inmate who has been returned to the custody of the department because of a violation of the terms of parole granted by the Board of Parole shall forfeit all good time earned or credits toward the reduction of the projected good time parole supervision date on that portion of the sentence served prior to the granting of parole.
>
> $\ast$          $\ast$          $\ast$
>
> (4) In all other cases, forfeiture of good time or credits toward the reduction of the projected good time parole supervision date may include up to a maximum of one hundred eighty days.

La.R.S. 15:571.5 states in pertinent part:

> § 571.5 Supervision upon release after diminution of sentence for good behavior; conditions of release;

revocation

A. When a prisoner committed to the Department of Corrections is released because of diminution of sentence pursuant to this Part, he shall be released as if released on parole.

B. The person released because of diminution of sentence pursuant to this Part shall be supervised in the same manner and to the same extent as if he were released on parole. The supervision shall be for the remainder of the original full term of sentence. If a person released because of diminution of sentence pursuant to this Part violates a condition imposed by the parole board, the board shall proceed in the same manner as it would to revoke parole to determine if the release upon diminution of sentence should be revoked.

C. Upon revocation of the person's release upon diminution of sentence by the parole board, the person shall be recommitted to the Department of Corrections for the remainder of the original full term. No further diminution of sentence for good behavior shall be allowed.

La.R.S. 15:574.9 states in pertinent part:

§ 574.9. Revocation of parole for violation of condition; board panels; return to custody hearing; duration of reimprisonment and reparole after revocation; credit for time served; revocation for a technical violation
          *          *          *
E. When the parole of a parolee has been revoked by the board for violation of the conditions of parole, the parolee shall be returned to the physical custody of the Department of Public Safety and Corrections, corrections services, and serve the remainder of his sentence as of the date of his release on parole, and any credit for time served for good behavior while on parole. The parolee shall be given credit for time served prior to the revocation hearing for time served in actual custody while being held for a parole violation in a local detention facility, state institution, or out-of-state institution pursuant to Code of Criminal Procedure Article 880.

Powell was released pursuant to diminution of sentence for good time credit earned with good behavior, under La.R.S. 15:571.5

23

(Doc. 1, Ex. B).    La.R.S. 15:571.4 is applicable to situations where a revocation of parole has occurred.    In contrast, La.R.S.15:571.5 applies to situations where an early release because of diminution of sentence has been revoked. Rochelle v. Louisiana Dept. of Public Safety & Corrections, 2007-0700 (La. App. 1st Cir. 12/21/07), 2007 wl 4465793, citing Howard v. La. Board of Probation and Parole, 589 So.2d 534, 535 (La. 1st Cir.), writ den., 590 So.2d 87 (La. 1991).    Therefore, Section 571.5 applies to Powell's case, and not Sections 571.4 or 574.9.

Section 571.5(C) states that, "[i]f such person's parole is revoked by the parole board for violation of the terms of parole, the person shall be recommitted to the department for the remainder of the original full term, subject to credit for time served for good behavior while on parole."    See  Howard, 589 So.2d at 535. It is well-settled that a person released under parole supervision due to diminution of sentence and subsequently reincarcerated is not entitled to restoration of good time earned or accumulated prior to his release. Manuel v. Stalder, 2004 CA 1920 (La. 1st Cir. 12/22/05), 928 So.2d 24, 26.

Therefore, Powell is not entitled to have Section 571.4 applied to his case.    This ground for relief is meritless.

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that Powell's habeas petition be GRANTED and that Powell be GRANTED a

24

conditional writ of habeas corpus, ordering his discharge from custody unless the State of Louisiana returns him to the Louisiana State Parole Board, East Baton Rouge Parish, Louisiana, for a new parole revocation hearing which comports fully with Powell's rights to minimal due process and to confront and cross-examine witnesses, **within 60 days** after the date of this Court's judgment.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 2(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

Pursuant to Rule 11(a) of the Rules Governing Section 2254 cases in the United States District Courts, this court must issue

25

or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.** *See* 28 U.S.C. § 2253(c)(2). **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

THUS DONE AND SIGNED in Alexandria, Louisiana on the 3rd day of January 2013.

_____
JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE