RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 4 / 16 / 13
   ᗰᗷ

WILLIAM POWELL,
     Petitioner

VERSUS

WARDEN, AVOYELLES CORRECTIONAL
CENTER,
     Respondent

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
    ALEXANDRIA DIVISION

CIVIL ACTION
SECTION "P"
NO. 1:12-cv-00296

JUDGE JAMES T. TRIMBLE
MAGISTRATE JUDGE JAMES D. KIRK

REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE ON

*OBJECTIONS* TO ORIGINAL REPORT AND RECOMMENDATION

A Report and Recommendation was issued on January 3, 2013, recommending that Powell be released unless he is afforded a new parole revocation hearing. On April 10, 2013, the district judge remanded the case to the undersigned for consideration of the **objections to the Report and Recommendation.**

The Report and Recommendation was issued as to a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 by pro se petitioner William Powell ("Powell") on January 26, 2012 (Doc. 1). Powell is challenging his 2008 parole revocation by the Louisiana Department of Public Safety and Correction's (DPSC's) Division of Probaton and Parole. Powell v. Louisiana Parole Bd., 2010 CA 2058 (La. App. 1st Cir. 5/6/2011), 2011 WL 2024478, writ den., 2011-CI-1075 (La. 11/23/11), 76 So.3d 1149.

Powell raised the following grounds for habeas relief in his petition:

1. Powell was denied his Sixth Amendment right to

confront and cross-examine adverse witnesses, where the entire hearing was predicated on hearsay evidence, as not one adverse witness was made available at the final revocation hearing for Powell's retained counsel to confront and cross-examine.

2. Powell was denied his Fourteenth Amendment right to due process where the preliminary probable cause hearing was held beyond the time limitations set by law, causing irreparable injury to Powell.

3. Powell was denied his Fourteenth Amendment due process right where the preponderance of evidence standard of proof for revoking parole was not met.

4. Powell's Fourteenth Amendment due process rights were violated where the State of Louisiana and the parole board allowed La.R.S. 15:574.9 to control Powell's case.

<u>State's Objections</u>

<u>Statute of Limitations</u>

The Respondent objects to the original Report and Recommendation on the ground that this court failed to consider the affirmative defense of the statute of limitations and ignored the statute of limitations, 28 U.S.C. § 2244.

The Respondent, through the Louisiana Attorney General's office in the *Middle* District of Louisiana, is partially correct. The initial Report and Recommendation did not address the statute of limitations because, in the *Western* District of Louisiana, the standard procedure is for pro se clerks to conduct an initial review of the cases, screening them for such things as exhaustion and timeliness pursuant to 28 U.S.C. § 2244. *Prior to service of the petition on the State*, this case was reviewed and found to be both timely and exhausted, and thus was ordered served on the

2

Respondent.   However, the Respondent's argument to the contrary
should have been addressed.

The applicable statute of limitations, 28 U.S.C. § 2244(d),
provides that the limitation period shall run from the latest of:

> (A) the date on which the judgment became final by the
> conclusion of direct review or the expiration of the time
> for seeking direct review;
> (B) the date on which the impediment to filing an
> application created by State action in violation of the
> Constitution or laws of the United States is removed, if
> the applicant was prevented from filing by such State
> action;
> (C) the date on which the constitutional right asserted
> was initially recognized by the Supreme Court, if the
> right has been newly recognized by the Supreme Court and
> made retroactively applicable to cases on collateral
> review; or
> (D) the date on which the factual predicate of the claim
> or claims presented could have been discovered through
> the exercise of due diligence.

The State argues that Powell's habeas petition was untimely
because his direct appeal of his probation revocation did not toll
his one year limitations period for filing his habeas petition.
The State contends that *only* state post-conviction proceedings toll
the statute of limitations, and that direct review proceedings do
*not* toll the statute of limitations, citing Butler v. Cain, 533
F.3d 314, 315 (5th Cir. 2008).

It is well-settled that the one year limitation period for
filing a federal habeas petition is tolled by properly-filed state
post-conviction proceedings.   However, the Respondent misses the
point.   The one year limitation period does not start to run until
"the date on which the judgment became final by the conclusion of

direct review," 28 U.S.C. § 2244(d)(1)(A).  As noted in this court's memorandum order of April 30, 2012 (Doc. 5), which incorporated the initial review of Powell's case by the pro se clerk, Powell's parole revocation became final on **November 23, 2011**, when the Louisiana Supreme Court denied writs on direct review.  Powell v. Louisiana Parole Bd., 2010 CA 2058 (La. App. 1st Cir. 5/6/2011), 2011 WL 2024478, writ den., 2011-CI-1075 (La. 11/23/11), 76 So.3d 1149.  Powell filed his habeas application in this court on **January 26, 2012**, well within his one year limitation period.

Therefore, Powell's habeas petition was filed timely and the Respondent's objection on that basis is meritless.

To the extent the Respondent appears to argue that Powell did not need to appeal his parole revocation because the parole board's October 2, 2008 decision was final (and appealable), that argument is meritless under federal law concerning exhaustion.  Petitioners seeking habeas relief under Section 2254 are required to exhaust *all* claims in state court prior to requesting federal collateral relief.  The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the *highest* state court.  A claim is not exhausted unless the habeas petitioner provides the highest state court with a fair opportunity to pass upon the claim, which in turn requires that the applicant present his claims before the state courts in a procedurally proper

4

manner according to the rules of the state courts. <u>Mercadel v. Cain</u>, 179 F.3d 271, 275 (5th Cir. 1999). The exhaustion of state remedies doctrine, codified in the federal habeas statute, 28 U.S.C. §2254, reflects a policy of federal-state comity. <u>Stewart v. Martinez-Villareal</u>, 523 U.S. 637, 118 S.Ct. 1618, 1621-22 (1998), citing <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S.Ct. 509, 512 (1971). A federal habeas corpus petitioner must have provided all state courts that could review the matter with a fair opportunity to review the substance of all of his federal habeas claims before a federal court will review the claims. <u>Coleman v. Thompson</u>, 501 U.S. 722, 111 S.Ct. 2546, 2554 (1991); <u>Anderson v. Harless</u>, 459 U.S. 4, 6, 103 S.Ct. 276, 277 (1982); <u>Picard</u>, 404 U.S. at 275-276, 92 S.Ct. at 512; <u>Mercadel v. Cain</u>, 179 F.3d 271, 275 (5th Cir. 1999).[1]

---

[1] The procedural default doctrine refers to a complex and evolving body of equitable principles informed and controlled by historical usage, statutory developments, and judicial decisions. As a corollary to the habeas statute's exhaustion requirement, the doctrine has its roots in the general principle that federal courts will not disturb state court judgments based on adequate and independent state law procedural grounds. <u>Dretke v. Haley</u>, 541 U.S. 386, 392-393, 124 S.Ct. 1847, 1851-1852 (2004), and cases cited therein. Federal habeas review is barred in all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claims will result in a fundamental miscarriage of justice. <u>Lott v. Hargett</u>, 80 F.3d 161, 164 (5th Cir. 1996). Also, <u>Coleman v. Thompson</u>, 501 U.S. 722, 750, 111 S.Ct. 2546 (1991).

Although claims are considered to be "technically" exhausted when state relief is no longer available, without regard to

Therefore, Powell properly exhausted his state court remedies through direct appellate review.   Compare Castaneda v. Stalder, 2008 21 821956, **1-2 (E.D.La. 2008); Scott v. Travis, 2008 wl 161716 (E.D.La. 2008).  Also, See v. Caldwell, 2010 wl 3998751, *1 (M.D.La.)(Report and Recommendation), adopted by 2010 wl 4073513 (M.D.La. 2010).   The Respondent's contention that Powell did not need to exhaust his state-court remedies through direct appeal is meritless.

Accordingly, Powell's habeas petition is *not* barred by the statute of limitations.   This objection is meritless.

Exhaustion

Next, the Respondent objects to the original Report and Recommendation on the ground that the undersigned ignored its argument that Powell failed to exhaust his state court remedies,

---

Although claims are considered to be "technically" exhausted when state relief is no longer available, without regard to whether the claims were actually exhausted by presentation to the state courts, if a petitioner fails to exhaust available state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would find the claims procedurally barred, then the claim is procedurally defaulted.  Jones v. Jones, 163 F.3d 285, 296 (5th Cir. 1998), cert. den., 120 S.Ct. 224 (U.S. 1999).   The reason for this is when federal habeas claims are technically exhausted because, and only because, the petitioner allowed his state law remedies to lapse without presenting his claims to the state courts, there is no substantial difference between non-exhaustion and procedural default.   Jones, 163 F.3d at 296.

Therefore, had Powell not exhausted his state court remedies (on *either* direct or collateral review) before proceeding to federal court, his claims could have been considered *procedurally barred*. See Castaneda, 2008 21 821956, at *2.

and complains of the cursory treatment given this issue in the original Report and Recommendation. As previously discussed above, Powell exhausted his state court remedies through his direct appeals to the state district court, appellate court, and supreme court, raising all of his habeas claims in the state courts. See Powell v. Louisiana Parole Bd., 2010 CA 2058 (La. App. 1st Cir. 5/6/2011), 2011 WL 2024478, writ den., 2011-CI-1075 (La. 11/23/11), 76 So.3d 1149. The Respondents's patently meritless and frivolous claim of lack of exhaustion was given all the attention it deserved in the original Report and Recommendation.

The Respondent argues that Powell failed to invoke his right to cross-examination at the parole hearing and, therefore, did not exhaust his state court remedies. The Respondent also argues that this court should take its word on this issue, as set forth in its brief. Since there are no transcripts of the state parole board's evidentiary hearings,[2] there is no evidence to indicate whether or

---

[2] As noted in the original Report and Recommendation, the undersigned ordered the Respondent to file a CD or a transcript of the preliminary hearing because Powell's parole revocation is based on the testimony and evidence adduced at the preliminary hearing.  The Respondent replied there is no recording or transcript of the preliminary hearing because the Parole Board is not "required" to make one; instead, there is a "summary" of the preliminary hearing written by the preliminary hearing officer.

The State also contended that Powell has never complained of the lack of a hearing transcript (Doc. 19).  However, the undersigned requested a transcript of the parole revocation proceedings in an attempt to discover whether the State did, in fact, comply with the minimum requirements of due process at Powell's hearings; as discussed below, certain aspects of due process are not reflected in the hearing reports on which the

not Powell objected at his hearings. However, it is noteworthy that the state court opinions in this case do not show that the Respondent made this argument when Powell raised this claim in the state courts on direct appeal. Since the issues raised by Powell on direct appeal were considered on the merits by the state courts, Powell's claims were not procedurally defaulted.

The undersigned declines to accept the Respondent's invitation to accept as fact its unverified, unsubstantiated assertion, made through its attorney of record in its brief, that Powell did not object at his hearing to the denial of his right to confront and cross-examine his witnesses. The undersigned will *not* assume Powell did not make the requisite objections at his hearings, where he cannot prove otherwise (due to the lack of hearing transcripts), which is the fault of the state.

Finally, it is noted that Powell raised the violation of his right to confront and cross-examine the witnesses against him on direct appeal, and the state courts addressed the issue (by adopting the Commissioner's recommendation). Notably, the state courts did **not** find Powell had failed to object and thus failed to preserve that issue for appeal. Therefore, Powell's claim is not procedurally barred.

---

Respondent relies. Since there are no transcripts, the undersigned assumed the hearing report accurately reflected Powell's hearing, including the evident deficiencies in due process.

Powell's state court proceedings on direct appeal indicate that Powell raised the claim that he was denied the right to confront and cross-examine the witnesses against him, as well as the other claims for habeas relief presented in his habeas petition. *Therefore, Powell properly exhausted his claims in the state courts on direct appeal before filing his habeas petition.*

This objection is also meritless.

<u>Powell's Right to Confrontation/Cross-Examination</u>

The Respondent next contends in its objection to the original Report and Recommendation that the undersigned was wrong to find Powell's confrontation claim is meritorious.

This claim was discussed at length in the original Report and Recommendation, and the Respondent's objection adds nothing of merit which alters the original report.

As the Respondent points out in its brief, "[o]nly the victim and Powell have any direct knowledge as to whether the victim consented to sex inside Powell's van." Since the victim (Adams) gave the investigating officers a false address and disappeared into the night, never to be seen, heard from, or found again, she did not appear at Powell's parole revocation hearings, and the criminal charge against him was dismissed. Thus, the Respondent's statement highlights the fact that there was no direct evidence to support the charge against Powell. The dearth of direct evidence was compounded by the fact that the on-scene investigating

9

officers, Officers Turner Rebenack, and Lincoln, also declined to appear at Powell's parole revocation hearings.  The hearing officer did not make a finding, supported by reasons, that there was good cause to deny Powell his right to confront and cross-examine his accusers; there is no transcript of the hearing, and he did not make that finding in his written reasons.  Therefore, it is clear that Powell was, in fact, denied his right to confront and cross-examine his accusers.

As explained in the original Report and Recommendation, Detective Neely was the sole witness testifying on behalf of the State at the parole hearings.  Unfortunately, as demonstrated in Det. Neely's reports, Det. Neely was called to the scene later by the on-scene officers and he relied on statements he took from Officers Turner, Rebenack and Lincoln, as well as their reports, to determine what occurred.  Therefore, Det. Neely's testimony at Powell's parole hearing constituted *hearsay*.

A parole board may not rely solely on hearsay testimony to establish guilt for a parole revocation.  McBride v. Johnson, 118 F.3d 432 (5th Cir. 1997); Farrish v. Mississippi State Parole Bd., 836 F.2d 969, 977 (5th Cir. 1988); State v. Rochelle, 38,633-KA (La. App. 2 Cir. 6/23/04), 877 So.2d 250, 256, and cases cited therein.

Consequently, not only was Powell's right to confront and cross-examine his accusers (the victim-Adams and Officers Turner, Rebenack and Lincoln), but his parole revocation was based solely

10

on hearsay evidence.  Therefore, it is recommended that Powell's parole revocation be reversed and that Powell be released if the State does not timely institute new parole revocation hearings.

The Respondent also (re)argues that certain facts were "agreed upon" at Powell's hearing; the Respondent is not referring to a stipulation of fact, but to Powell's implicit agreement to certain facts at the hearing.

As stated in the original Report and Recommendation, the Commissioner's report stated that Petitioner did not dispute the facts except for stating he did not try to rape Adams, but that Adams (who had admitted to the officers that she was drunk), had first agreed to have sex with him, then changed her mind (Doc. 16, p. 38/84).  Powell's version of the event explains why Adams was in his van and partially undressed.

It is notable that the Respondent failed to mention that Powell stated that Adams had first agreed to have sex with him in its objections; instead, the Respondent states only that "Powell stated that the events took place pretty much the way the report was written" (Doc. 221, p. 8).  Therefore, *the Respondent's assertion in brief that Powell "stipulated" to the truth of the hearsay evidence is incorrect and appears to be an attempt to mislead the court.*  Since the point of contention, whether or not Adams initially consented to have sex with Powell, goes to the

11

heart of the attempted rape charge,[3] Powell did not "agree" or "stipulate" to enough facts to establish his guilt for purposes of his parole revocation.

In any event, Powell was denied his right to confront and cross-examine his accusers - Adams, Turner, Rebenack, and Lincoln. Therefore, Powell's parole revocation should be reversed and he should be afforded new revocation proceedings which comply with the minimal requirements of due process.

This objection is also meritless.

<u>Unrecorded Hearing</u>

The Respondent contends in this objection to the original Report and Recommendation that, since Powell did not raise the claim that his hearing was unrecorded in his habeas petition, it should not be considered by this court.   The Respondent also argues there is no requirement that the preliminary hearing be recorded.

The Respondent mistakes the matter.   The undersigned has not recommended that Powell's parole revocation be reversed because there is no transcript of the preliminary hearing.   Instead, it is pointed out that, since the parole board based its decision solely on the evidence adduced at the preliminary hearing, and did not hear testimony as to the offense at the final hearing, the preliminary hearing should have been recorded so there would be an

_____

[3] La.R.S. 14:41(A): "Rape is the act of anal, oral, or vaginal sexual intercourse with a male or female person committed without the person's lawful consent."

12

evidentiary record for review. However, to be crystal clear, *the undersigned recommends that Powell's parole revocation be reversed because he was denied his minimum due process right to confront and cross-examine the witnesses against him – Adams, Turner, Rebenack and Lincoln –* and not because there is no hearing transcript.

Moreover, although Powell did not raise the issue of an unrecorded hearing, the issue was effectively raised by the Respondent when it argued before this court about the "evidence" presented at the hearing and the "objections" not made by Powell at the hearing – arguments which are simply not supported by any evidence because there is no hearing transcript. The preliminary hearing officer's summary of the preliminary hearing did not make notes of whether or not objections were made or whether Powell adequately invoked his right to confront his accusers, did not note evidence that was not presented, and did not make any findings as to whether there was "good cause" to not allow Powell to confront and cross-examine the adverse witnesses, Adams, Turner, Rebenack, and Lincoln.

As to the Respondent's claim that Powell did not invoke his right to confront and cross-examine his accusers, (1) since there is no recording of the hearing, we don't really know what transpired, and (2) Powell probably expected to be afforded minimal due process and have his accusers present evidence against him, without being required to ask that they be present for

13

confrontation and cross-examination.

Finally, contrary to the Respondent's argument in brief (Doc. 21, p. 11), it is long and well-settled in federal law, under Morrissey v. Brewer, 408 U.S. 471, 484, 92 S.Ct. 2593 (1972), that the federal Constitution requires that a parolee be afforded informal hearings structured to assure that the finding of a parole violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the parolee's behavior. Those hearings shall consist of both a preliminary hearing to determine whether a reasonable ground exists for revocation of parole *and* a final revocation hearing at which the parolee is afforded the minimum requirements of due process, including (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) *the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)*; (e) 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole. Morrissey, 408 U.S. at 484. See also, State ex rel. Bertrand v. Hunt, 308 So.2d 760, 763 (La. 1975).

14

The "preliminary hearing" in Powell's case, conducted by the hearing officer (not the parole board), was the hearing at which the evidence against Powell was presented, and Powell appeared with counsel and defended himself against the charge.  The parole board held a "final hearing" at which they did nothing more than discuss and adopt the hearing officer's findings and recommendation.  The record does not indicate that the preliminary hearing officer found there was good cause to not allow Powell to confront and cross-examine the adverse witnesses against him (victim Adams, Officer Turner, Officer Rebenack, Officer Lincoln).   No evidence was presented by the State at the second hearing (Tr. p. 74/102).  The "final hearing" in this case obviously did not comply with the minimal requirements of due process for a parole revocation proceeding.  See State ex rel. Bertrand, 308 So.2d at 763.

There were no witnesses or other evidence presented against Powell at his "final revocation hearing."  Instead, the parole board simply reviewed and relied on the findings of the preliminary hearing officer to make its determination of guilt, in violation of Powell's right to confront and cross-examine the adverse witnesses. That due process violation is what led to the evidentiary quandry in which the Respondent now finds itself in this case.

Certificate of Appealability

Finally, the Respondent objects to the instructions at the end of the original Report and Recommendation for applying for a

15

certificate of appealability in a Section 2254 case. The Respondent argues that it is unnecessary for it, as a government entity, to obtain a certificate of appealability in order to file an appeal with the Fifth Circuit.

The notice provided as to the applicable rule governing habeas appeals is a standard notice provided by the courts of the Western District of Louisiana as a courtesy to the parties. An objection thereto by the Respondent will not be considered.

Powell's Objections

Procedural Default by the State

Powell objects to the original Report and Recommendation, contending the Respondent should not be permitted to hold a second final revocation hearing because the State defaulted by holding the preliminary probable cause hearing late. Powell contends that, although he deferred holding his preliminary hearing until the state criminal charge was disposed of, the preliminary hearing was untimely because it was held three and a half months after the dismissal of the state criminal charge.

Powell has failed to show that the three and a half month delay was unreasonable. There is no strict time limit for holding a preliminary hearing, as Powell argues. The cases Powell cites do not establish a time limit for holding a preliminary hearing and

are inapposite to Powell's case.[4]   Therefore, as stated in the original Report and Recommendation, this argument is meritless.

Powell also contends he was prejudiced by the State's failure to hold a timely preliminary hearing because the officers on scene (Turner, Rebenack and Lincoln) refused to communicate or participate in the parole revocation proceedings, and the victim absconded.  Since this argument harkens to the lack of minimal due process afforded to Powell at his parole hearings, and the dearth of witnesses for the State prejudiced the State more than Powell (or should have), this argument is meritless.

This objection is meritless.

Due Process Violations

Powell next objects to the original Report and Recommendation on the ground that the undersigned erred in finding his parole fell within the provisions of La.R.S. 15:573.5(C), instead of La.R.S. 15:574.9.  Powell further argues that his good time parole is a vested right, and therefore could not be revoked.

This issue was addressed in the original Report and Recommendation.  As previously stated, La.R.S. 15:574.9 applies to

---

[4] The case of Brannum v. U.S. Bd. of Parole, 361 F.Supp. 394 (D.C.Ga. 1973), aff'd, 490 F.2d 990 (5th Cir. 1974), did not involve a waiver of the time limit, and was a case in which no preliminary hearing was held.  In State ex rel. Clark v. Hunt, 337 So.2d 438 (La. 1976), the court found no violation of constitutional rights where the petitioner waived deferred the final determination of the parole violation until the outcome of the appeal.

"Revocation of parole for violation of conditions." La.R.S. 15:571.5 applies to "Supervision upon release after diminution of sentence for good behavior; conditions of release; revocation." Since, as Powell admits, he was given early release for good behavior ("good time" credits) and was not on parole, Section 571.5 is applicable. Rochelle v. Louisiana Dept. of Public Safety & Corrections, 2007-0700 (La. App. 1st Cir. 12/21/07), 2007 wl 4465793, citing Howard v. La. Board of Probation and Parole, 589 So.2d 534, 535 (La. 1st Cir.), writ den., 590 So.2d 87 (La. 1991).

However, Powell was released "as if on parole" pursuant to Section 571.5(A), and was supervised in the same manner and to the same extent as it he was on parole for the remainder of the original full term of his sentence. Section 571.5(B). When Powell was charged with a felony, he was arrested, and the hearing for revocation due to criminal conduct was held (regardless that the charges were dismissed) pursuant to Section 571.5(C) (the board shall proceed in the same manner as it would to revoke parole to determine if the release upon diminution of sentence should be revoked).

So, while Powell is correct that he was not "on parole," he was supervised *in the same manner as if* he was on parole and his "early release for good behavior" could be revoked in the same manner as a parole could be revoked. Therefore, Powell did not have a "vested right" to early release for good behavior that put

18

him beyond the control of the parole board.

This objection is also meritless.

Unconstitutional Bill of Attainder

Finally, Powell states in his objections to the original Report and Recommendation that the undersigned failed to address his argument that la.R.S. 15:571.5(C) is an unconstitutional bill of attainder, an ex post facto violation as applied to Powell, and a law impairing th obligation of contracts.

Powell contends, correctly, that he has never been sentenced to a supervised portion of his sentence. However, pursuant to the opportunity provided by La.R.S. 571.3 to diminish his sentence, Powell signed a contract to give up incentive wages in exchange for good time credits, with which he could shorten his sentence. Powell argues that he contracted for a diminished sentence, and not to a period of supervision. As discussed above, a releasee given an early release for good behavior is subject to supervision, by law, for the remainder of the length of his original sentence. La.R.S. 571.5. Nor did Powell become subject to an indeterminate sentence; Powell was to be released under supervision for the remainder of the original full term of his sentence. La.R.S. 571.5(B)(2).

Powell has not shown that La.R.S. 15:571.5 is inapplicable to him, nor has he shown is it unconstitutional. Therefore, Powell's objection to La.R.S. 15:571.5 is meritless.

19

Costs

Finally, Powell objects to the original Report and Recommendation on the ground that the State should have to bear the costs of this proceeding and the costs associated with his re-registration/public notification as a sex offender if he released, since he had a job and had paid those costs before he was arrested.

Since a claim for monetary damages may not be raised in a habeas proceeding, this objection is meritless.   See 28 U.S.C. § 2254.

Conclusion

Based on the foregoing discussion, *because the objections by both the Respondent and Powell are meritless*, IT IS AGAIN RECOMMENDED that Powell's habeas petition should be GRANTED and Powell should be GRANTED a conditional writ of habeas corpus, ordering his discharge from custody unless the State of Louisiana returns him to the Louisiana State Parole Board, East Baton Rouge Parish, Louisiana, for a new parole revocation hearing which comports fully with Powell's rights to minimal due process and to confront and cross-examine witnesses, **within 60 days** after the date of this Court's judgment.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 2(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may

20

respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Pursuant to Rule 11(a) of the Rules Governing Section 2254 cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.** *See* 28 U.S.C. § 2253(c)(2). **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

21

THUS DONE AND SIGNED in Alexandria, Louisiana on the _15th_ day of April 2013.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE

22